UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD RICKS,

    Petitioner,

Case No. 13-cv-11800

v.

HONORABLE STEPHEN J. MURPHY, III

CARMEN PALMER,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR A
WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE
OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Edward Ricks, who is confined at the Alger Correctional Facility in Munising, Michigan, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Ricks challenges his convictions and sentences for carjacking, Mich. Comp. Laws § 750.529a; armed robbery, Mich. Comp. Laws § 750.529; being a felon in possession of a firearm, Mich. Comp. Laws § 750.224f; felonious assault, Mich. Comp. Laws § 750.82; possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b; receiving or concealing a stolen motor vehicle, Mich. Comp. Laws § 750.535(7); receiving and concealing stolen property valued at $ 1,000 or more but less than $ 20,0000, Mich. Comp. Laws § 750.535(3)(a); and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. For the reasons stated below, the application for writ of habeas corpus will be denied.

**BACKGROUND**

Ricks was convicted following a jury trial in the Wayne County Circuit Court. The

1

Michigan Court of Appeals summarized the case as follows[1]:

> On July 26, 2007, Frederick Wingfield worked as a delivery-truck driver for General Wine and Liquor Company, which is now called Great Lakes Wine and Spirits. During a 1:00 p.m. delivery at Dean's Liquor in Detroit, Wingfield encountered a man holding a gun in the back alley of the store. It was sunny outside, and Wingfield was able to see the man's face. The man approached within a few feet of Wingfield and pointed his gun at Wingfield's chest. The man demanded money and the keys to the delivery truck. He then talked to Wingfield about how to operate the truck and the value of its contents. The man asked whether there was a tracking device in the truck, and Wingfield confirmed that there was. Wingfield observed that the man was approximately 35 or 40 years old, five feet, eleven inches in height, and 195 pounds. He was dark skinned with a bald head and a thin mustache. He wore a "du-rag," a baseball hat or skull cap, blue jean shorts, and a light-colored t-shirt.
>
> Immediately after the incident, Wingfield called the police and then his employer to report the carjacking. He spoke with his employer's loss-prevention director, Peter Bullach, who was a former detective sergeant and 25–year veteran of the Detroit Police Department. Wingfield described the carjacker's appearance and the direction of the truck as it fled the scene.
>
> Based on Wingfield's description and information that Bullach had gathered from investigating prior similar incidents, Bullach and fellow employee Kenneth Anderson[2] drove toward Yacama Street near the I–75 expressway to track down the truck. With the help of the company dispatcher, who obtained GPS tracking information from the truck's telephone system, Bullach and Anderson successfully located the truck. They first spotted it heading the wrong way on Yacama, a one-way street.  Bullach gave chase and followed the truck to Lance Street, where it came to a stop. As Bullach and Anderson approached, the driver's door of the truck was open, and the back-up lights were blinking because the vehicle was still in gear. The man standing next to the open door, who fit Wingfield's description of the carjacker, started walking in Bullach's direction. Bullach was able to look the man "dead on" and got within 30 to 35 feet of him. As Bullach began to exit his vehicle, the man lifted up his shirt, pulled out a gun, pointed it in the direction of Bullach and his vehicle, and then ran away.  Bullach got back into his vehicle and pursued the man. As the man ran down the sidewalk, Bullach pulled close to the curb alongside him. The man

---

[1] This statement of facts is presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

[2] Anderson was not called to testify at trial. The parties stipulated that if he were called as a witness, he could not identify defendant.

then began to run across lawns. Bullach slammed on his brakes and started to get out of his vehicle to chase the man on foot. The man again pointed his gun toward Bullach. Bullach pulled out his own weapon and fired a shot at the man, who then fled the scene.

Two days after the incident, Wingfield went to the police station to view a photographic line-up. Wingfield positively identified defendant among a selection of six photographs. Wingfield was "very certain" of his identification.

At the preliminary examination on August 21, 2007, Wingfield was asked whether he saw the person who robbed him sitting among the individuals seated in the courtroom pews. The pews were "completely filled" with people. Wingfield identified a person other than defendant. He testified at trial that he was scared at the preliminary examination, defendant's appearance was similar to the person he identified, and he had chosen between defendant and the other person, as they looked alike.

At the jury trial on October 2010, Wingfield did not believe defendant was the person who committed the carjacking. He testified, however, that defendant's appearance at trial, where he was clean shaven and wearing glasses, was vastly different than his appearance in the photograph shown to him by the police at the photographic line-up two days after the incident. Wingfield remained certain that the person he identified in the photographic line-up (defendant) was indeed the person who robbed him. The court allowed the jury to submit questions, and Wingfield answered a series of questions regarding the quality of his memory and vision.

Bullach also viewed a photographic line-up at the behest of the police two days after the crime. He viewed six photos and initially identified photo number six as the culprit of these crimes. When asked whether he was sure, Bullach said no because he was debating between photo number one and photo number six. Bullach studied the photos for another minute or two and chose photo number one, defendant, as the culprit. When asked again whether he was sure, Bullach said yes. When asked to identify the culprit among the pews of the very-crowded courtroom at the preliminary examination, Bullach positively identified defendant. At trial, Bullach was 100 percent certain that defendant was the man he pursued near the delivery truck on the day of the carjacking.

Defendant was previously tried and convicted of the crimes charged; however, we reversed and remanded for a new trial because defendant was denied his constitutional right of confrontation when a police officer was permitted to testify regarding the substance of a telephone call she received from an anonymous source, which eventually led to defendant's arrest. *People v. Ricks*, unpublished opinion per curiam of the Court of Appeals, issued June 9, 2009 (Docket No. 283053). On retrial, defendant was again convicted . . . .

*People v. Ricks*, No. 301479, slip. op. at *1-3 (Mich. Ct. App. April 26, 2012) (footnote in original).

Ricks then appealed. The Michigan Court of Appeals affirmed his conviction, and the Michigan Supreme Court denied leave to appeal. *People v. Ricks*, No. 301479 (Mich. Ct. App. April 26, 2012), *lv. den.* 493 Mich. 856.

## STANDARD OF REVIEW

In a proceeding under 28 U.S.C. § 2254, a writ of habeas corpus may issue only if the state court adjudication of a claim on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

Because "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system," *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003), a federal court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 410–11. Instead, a "highly deferential standard" applies under which "state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting first *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and second *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). Therefore, "so long 'fairminded jurists could disagree' on the correctness of the state court's decision," a state court's determination that a claim lacks merit will preclude habeas relief. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

## DISCUSSION

Ricks makes four habeas claims. He argues that (1) he was denied effective assistance of counsel at trial, (2) insufficient evidence supports his convictions, (3) his sentence is constitutionally disproportionate to his offense, and (4) the trial court violated his due process and fair trial rights by erroneously admitting an in-court identification. The petition lacks merit.

I. <u>Ineffective Assistance of Counsel</u>

Ricks alleges that he was denied the effective assistance of counsel because the attorney representing him at the retrial declined to call Dr. Steven Raymond Miller, an expert on eyewitness identification who the trial court had appointed at the request of the attorney representing Ricks at his first trial.

Even on direct review, demonstrating ineffective assistance of trial counsel is difficult. *Harrington*, 131 S. Ct. at 788 ("Surmounting *Strickland's* high bar is never an easy task."

*Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). The criminal defendant must first show that his trial counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Meeting this standard requires overcoming the strong presumption that the counsel's behavior could be reasonably sound trial strategy. *Id.* at 687–88; *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011). Second, the defendant must show that the deficient performance was prejudicial. *Id.* This requires the defendant to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, demonstrating ineffective assistance of counsel is all the more difficult. *Harrington*, 131 S. Ct. at 785; *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Due to the deference given to state courts, the question is not just whether the habeas petitioner's counsel was actually ineffective; rather, the critical inquiry is whether the state courts unreasonably applied the *Strickland* standard to the facts of the petitioner's case. *Knowles*, 556 U.S. at 123. This is a "substantially higher threshold." *Id.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *see also Harrington*, 131 S. Ct. at 788.

Here, the Michigan Court of Appeals rejected Ricks's ineffective assistance of counsel claim. *People v. Ricks*, No. 301479, slip op. at *4. The court observed there were sound reasons for pursuing a theory of erroneous identification but not calling the expert. One was that Ricks's attorney feared that the expert's proposed testimony would not be admissible under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *Ricks*, No. 301479, slip op. at *4. Indeed, Dr. Miller himself acknowledged he could not defend against a *Daubert*

challenge. *Id.* at *4 & n.3. And another was that the attorney reasonably believed that he could dispense with expert testimony "because of the obvious problems with the witnesses' identification" of Ricks. *Id.* at 4. Consistent with this evaluation, Ricks's attorney cross-examined Wingfield, who was unable to identify Ricks at trial, and Bullach, who had identified a different person in the photographic array. *Id.* The attorney also obtained a standard jury instruction on the dependability of eyewitness identification. *Id.*

The state court's conclusion was reasonable. No Supreme Court precedent requires counsel to call "an expert witness about the problems with eyewitness testimony." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011). A defense attorney may reasonably choose to pursue a mistaken identification theory by cross-examining witnesses about inconsistencies in their identifications or by otherwise discrediting the witnesses' testimony. *See Dorch v. Smith*, 105 F. App'x 650, 653 (6th Cir. 2004); *Greene v. Lafler,* 447 F. Supp. 2d 780, 794–95 (E.D. Mich. 2006). Ricks is not entitled to habeas relief on his first claim.

II.  Sufficiency of the Evidence

Ricks also argues that there was insufficient evidence to establish his identity as the perpetrator.

It is settled law that the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). But due process only requires that the record contain evidence reasonably sufficient to "support a finding of guilt beyond a reasonable doubt" — a standard that is satisfied so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). A court should not reweigh the

evidence or second-guess a witness's credibility. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003); *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).

Moreover, to obtain post-conviction relief, a federal habeas petitioner must also show that a state court decision finding sufficient evidence was objectively unreasonable. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). The resulting hurdle is "nearly insurmountable." *Davis v. Lafler*, 658 F. 3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

On direct appeal, the Michigan Court of Appeals rejected Ricks's insufficient evidence claim. It explained:

> Here, despite an initial selection of a different person at the photographic line-up, Bullach positively identified defendant as the carjacker, and he remained consistent in his certainty at both the preliminary examination and trial. Furthermore, while Wingfield identified a different person at the preliminary examination and was unable to identify defendant as the carjacker at trial three years after the incident, he testified that he was very certain that the carjacker was the person that he identified in the photographic line-up: defendant. We hold that while Wingfield's and Bullach's identifications of defendant may have been less than compelling, the credibility of their identification testimony was a question for the trier of fact that this Court does not resolve anew. The record reflects that, in addition to hearing testimony from the witnesses as elicited by the attorneys, the trial court permitted jurors to submit their own questions to be asked of the witnesses so that they could fully assess the credibility and reliability of the testimony. Viewing this evidence in a light most favorable to the prosecution, we hold that the evidence was sufficient to find defendant guilty of these crimes because, at some point, both Wingfield and Bullach identified defendant as the perpetrator of the crimes, including when Bullach identified defendant as the culprit in court.

*Ricks*, No. 301479, slip op. at *5 (internal citations omitted).

The Michigan Court of Appeals's conclusion was reasonable. Bullach unequivocally identified Ricks at trial as being the person who drove the stolen truck and who pointed a

8

gun at him. This testimony was sufficient to support the convictions. *See Sok v. Romanowski*, 619 F. Supp. 2d 334, 351 (W.D. Mich. 2008) (holding that an in-court identification was sufficient to support a conviction despite conflicting testimony from the defendant and an alibi witness). Additionally, Wingfield positively identified Ricks at a photographic lineup conducted two days after the incident. Wingfield was "very certain" of his identification. Albeit not able to identify Ricks at trial, Wingfield explained that the petitioner's appearance at trial, during which he was clean shaven and wearing glasses, was different than his appearance in the photograph, in which he had facial hair and no glasses. And Wingfield remained certain that the person whom he identified in the photographic lineup was his assailant. The jury could have reasonably believed Wingfield's testimony. *See Burger v. Prelesnik,* 826 F. Supp. 2d 997, 1015–16 (E.D. Mich. 2011) (observing that the jury could reasonably rely on an identification witness's testimony who identified the perpetrator at trial but was unable to identify him in two photo arrays due to the age of the photographs and changes in facial hair).

Given the testimony presented, the Michigan Court of Appeals did not unreasonably reject the petitioner's sufficiency of evidence claim.

III. <u>Sentencing Errors</u>

Ricks claims that his sentences for the offenses of carjacking and armed robbery were disproportionate to the offenses and to the offender. Ricks also claims that the sentences were imposed to penalize him for successfully appealing after his first trial.

The petitioner's sentence of 30 to 50 years for the carjacking conviction and 25 to 50 years for the armed robbery conviction were within the statutory limits for those offenses. *See* Mich. Comp. Laws § 750.529 (armed robbery); Mich. Comp. Laws § 750.529a(1)

(carjacking). A sentence imposed within the statutory limits is rarely susceptible to collateral attack. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Once a federal court determines that a state court sentence is within the statutory limits, federal habeas review typically ends. *Allen v. Stovall,* 156 F. Supp. 2d 791, 795 (E.D. Mich. 2001). Ricks fails to overcome this strong presumption.

The Eighth Amendment contains only a "narrow proportionality principle," *Graham v. Florida*, 560 U.S. 48, 59–60 (2010) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997, 1000–01 (1991)), making successful challenges to the proportionality of a particular sentence "exceedingly rare," *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). Federal courts, therefore, will not overturn a sentence within statutory limits as disproportionate if the sentence is not death or life imprisonment without parole. *See Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000); *Seeger v. Straub*, 29 F. Supp. 2d 385, 392 (E.D. Mich. 1998). Ricks accordingly is not entitled to relief under the Eighth Amendment, and his claim that his sentence is disproportionate under Michigan law is not cognizable on habeas review. *Hastings v. Yukins*, 194 F. Supp. 2d 659, 673 (E.D. Mich. 2002); *Whitfield v. Martin,* 157 F. Supp. 2d 758, 761 (E.D. Mich. 2001).

Ricks also alleges that the sentences that he received after the second trial were imposed to penalize him for successfully appealing his first conviction, because the sentences imposed after the second trial were greater than the sentences he received at his first trial. The Michigan Court of Appeals rejected this claim. *Ricks*, No. 301479, slip op. at *6.

Due process of law requires that "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after

a new trial." *North Carolina v. Pearce,* 395 U.S. 711, 725 (1969). To guard against vindictiveness, the Supreme Court requires that, "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear" on the record. *Id.* at 726. Federal courts have interpreted this rule to apply "a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *United States v. Goodwin,* 457 U.S. 368, 374 (1982). But where there is no reasonable likelihood that the increased sentence is the product of actual vindictiveness on the part of the sentencing authority, such as when different judges conduct each sentencing, the burden remains upon the defendant to prove actual vindictiveness in the sentencing decision. *See Alabama v. Smith,* 490 U.S. 794, 799 (1989); *Texas v. McCullough*, 475 U.S. 134, 140 (1986).

Because Ricks was sentenced by two different judges, the presumption of vindictiveness does not apply. *See Goodell v. Williams*, 643 F.3d 490, 500–01 (6th Cir. 2011). Moreover, he fails to allege or prove any actual vindictiveness. The Michigan Court of Appeals thus reasonably rejected his vindictive sentencing claim, precluding habeas relief.

IV. <u>Suggestive Identification</u>

Finally, Ricks claims that the judge erred in denying his motion to suppress Wingfield's and Bullach's in-court identifications.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). There is a two-step procedure for determine whether an identification can be admitted consistent with due process. The first step is to

determine whether the identification procedure was impermissibly suggestive. *Ledbetter v. Edwards*, 35 F.3d 1062, 1070–71 (6th Cir.1994). If it was, the second step is to determine whether the identification nonetheless has sufficient indicia of reliability considering all the circumstances. *Id.* Five considerations bear on the reliability of an identification:

1. the witness's opportunity to view the criminal at the time of the crime;
2. the witness's degree of attention at the time of the crime;
3. the accuracy of the witness's prior description of the defendant;
4. the witness's level of certainty when identifying the suspect at the confrontation; and,
5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. 188, 199–200 (1972).

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a habeas petitioner meets this burden of proof that the burden shifts to the state to prove that the identification was reliable. *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004) (citing *English v. Cody,* 241 F. 3d 1279, 1282–83 (10th Cir. 2001)). Here, Ricks fails to show that the police conducted improper pretrial identifications. Ricks has offered no evidence to the Michigan Court of Appeals or to this Court showing that the composition of the photo arrays or other aspects of the pretrial identification procedures were suggestive. The fact that Bullach initially picked another suspect from the photographic array and that Wingfield could not positively identify Ricks at the preliminary examination is not evidence of suggestiveness. Due process, therefore, does not require exclusion of the identifications or entitle Ricks to habeas relief. *See Perry v. New Hampshire*, 132 S. Ct. 716, 730 (2012) ("[T]he Due Process Clause does not require a preliminary judicial inquiry into the reliability of an

eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement."); *Cameron v. Birkett,* 348 F. Supp. 2d 825, 843 (E.D. Mich. 2004) ("[T]he Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification.").

## CERTIFICATE OF APPEALABILITY

Before a habeas petitioner may appeal an adverse district court decision, the district court must first determine if the petitioner is entitled to a certificate of appealability. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petition that meets this standard must be reasonably debatable on the merits or must present issues that should be developed further. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Having considered the petition, the Court finds that Ricks has not made a substantial showing of a denial of a constitutional right and that an appeal of this order would not be in good faith. Because any appeal would be frivolous, the Court will deny a certificate of appealability and deny Ricks leave to proceed in forma pauperis on appeal. *See Long v. Stovall,* 450 F. Supp. 2d 746, 755 (E.D. Mich. 2006); *Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

## ORDER

**WHEREFORE, IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus

is **DISMISSED WITH PREJUDICE**.

    **IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

    **IT IS FURTHER ORDERED** that petitioner leave to appeal in forma pauperis is **DENIED**.

    **SO ORDERED**.


                                            s/Stephen J. Murphy, III
                                            STEPHEN J. MURPHY, III
                                            United States District Judge

Dated: April 14, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 14, 2014, by electronic and/or ordinary mail.

                                            s/Carol Cohron
                                            Case Manager